MORAVIA COMMUNITY SCHOOL DIS-
TRICT, Petitioner–Appellant/
Cross–Appellee,

v.

MORAVIA EDUCATION ASSOCIA-
TION, Respondent–Appellee/
Cross–Appellant,

and

Public Employment Relations Board,
Respondent–Appellee.

No. 89–398.

Court of Appeals of Iowa.

May 24, 1990.

John R. Phillips and Thomas W. Foley of Nyemaster, Goode, McLaughlin, Emery & O'Brien, P.C., Des Moines, for petitioner-appellant/cross-appellee.

Gerald L. Hammond of Sayre & Gribble, P.C., Des Moines, for respondent-appellee/cross-appellant.

Jan V. Berry, Des Moines, for respondent-appellee.

Heard by SCHLEGEL, P.J., and HAYDEN and HABHAB, JJ.

HABHAB, Judge.

The Moravia Community School District (School District) appeals from the district court's decision affirming an arbitration panel's award of a fact-finder's recommended salary schedule. The arbitration award resulted from impasse proceedings under the Public Employment Relations Act (PERA), see Iowa Code § 20.22.

The Public Employment Relations Board (PERB) seeks affirmance of the district court's decision. The Moravia Education Association (MEA) cross-appeals, alleging error in the district court's refusal to dismiss the School District's petition for judicial review. We affirm.

The MEA is a certified employee organization representing the teachers in the Moravia Community School District. The School District's Board of Directors (the Board) is the governing body of the School District. The MEA and the School District were parties to a one-year collective bargaining agreement which expired June 30, 1988. The parties met ten to twelve times in an attempt to negotiate a successor agreement. A bargaining session was held commencing at 6:30 p.m. on February 19 and concluding at 2:00 a.m. on February 20. That bargaining session was conducted with the assistance of a mediator.

The Board's bargaining team consisted of two people: Dean Kaster, a Board member, and the Board's secretary. At the conclusion of the bargaining session, the parties signed a tentative agreement which embodied those terms agreed to during the course of that meeting.

The tentative agreement significantly altered the preexisting salary schedule. The prior agreement contained a salary schedule consisting of steps 0 to 14 at BA and BA + 10 lanes, steps 0 to 15 at the BA + 20 lane, and steps 0 to 16 at the MA lane.

The tentative salary schedule provided for steps 0 to 7 at all lanes. Additionally, the tentative agreement provided for a base salary of $16,000 for 1988–89 and a base salary of $17,000 for 1989–90. There is a significant modification to the vertical steps of the salary schedule for each step was increased to $900. Previously, the vertical steps ranged from $365 to $500.

Under the previous agreement, the horizontal increments were as follows: $500 between the BA and BA + 10 lanes; $500 between the BA + 10 and BA + 20 lanes; and $700 between the BA + 20 and the MA lanes. The parties in the tentative agreement increased the horizontal increment to $1,000 between the BA and the BA + 10 lanes, and between the BA + 10 and BA + 20 lanes, and $1,100 between the BA + 20 and MA lanes. The previous agreement had no longevity provision. The tentative agreement, however, contained a provision for longevity but provided that all teachers would remain frozen at their 1988–89 step.

The Board met on March 7, 1988, to consider the tentative agreement. The Board voted to reject certain portions of that agreement by vote of 4–0, with the Board's negotiator Kaster abstaining. Specifically, the Board rejected that part of the tentative agreement that relates to the compression of salary schedule, the horizontal and vertical increments, as well as the 5% longevity increase. The MEA, on the other hand, ratified all aspects of the tentative agreement.

The MEA then petitioned for fact-finding under the impasse procedures of Iowa Code section 20.21. In doing so, the MEA proposed the schedule found in the tentative agreement. The School District, however, proposed a new salary schedule. It contends the comparability evidence did not support a seven-step salary schedule, the $900 and $1,000–1,100 increments, or the 5% perpetual longevity.

The fact-finder recommended that the tentative agreement be incorporated into the new collective bargaining agreement. The School District rejected the fact-find-

er's recommendation and the parties proceeded to arbitration before the PERB.

We note here that the School District did not contest the 1988–89 agreed-upon $16,000 base salary, the increased district insurance contributions, the 1989–90 $17,000 base salary, and uniform $1,000 salary increases or the multi-year agreement on noneconomic contract provisions before the fact finder nor did it contest those items before the arbitration panel. At the hearing before the arbitration panel, the School District proposed a 14–16 step schedule with uniform $500 vertical and horizontal increments and longevity payments of $250 and $500 to teachers in the first, third, and fifth years after they reached the maximum steps of the BA + 20 and MA lanes, respectively. In doing so, the School District maintained "the comparables do not support the position taken by the Association" and that "the arbitration panel, based on the factor of comparability must award in favor of the [district]." The MEA again proposed the tentative agreement as recommended by the fact-finder. It argued that the tentative agreement resulted from good faith negotiations and, accordingly, should not be disturbed.

The majority of the arbitration panel concluded the tentative agreement should be approved. The panel also found the compressed salary schedule was unique to Iowa schools. However, the panel concluded that the tentative agreement should be incorporated into the new collective bargaining agreement.

The School District then filed a petition for judicial review. Respondents MEA and PERB filed a motion to dismiss on the ground that section 20.22(13) makes an arbitration decision final and binding unless the decision violates section 20.17(6) and no violation of that section was alleged. The court overruled the motion, finding that judicial review is not limited to violations of section 20.17(6). In its consideration of the merits, the court found the arbitration panel considered all relevant factors and there was substantial evidence to support its decision. The court affirmed the arbitration panel's decision.

The School District now appeals. It claims that the court did not consider the issue of whether the arbitration award was based on the mandatory decisional criteria of Iowa Code section 20.22(9). In this respect, section 20.22(9)(b) provides that an arbitration panel should consider comparable conditions of other public employees. Here, the panel found that the terms of the tentative agreement were not comparable to those of other school districts, yet the panel concluded that the tentative agreement, as recommended by the fact-finder, should be adopted.

The School District further asserts that the award of the arbitration panel violated statutory provisions, was in excess of statutory authority, violated an agency rule, was affected by error of law, and was arbitrary and an abuse of discretion in violation of Iowa Code sections 17A.19(8)(a), (b), (c), (e), and (g). The School District also states that under PERB rules either party had the right to reject the tentative agreement. The School District argues the panel abused its discretion by punishing the School District for exercising its lawful right.

Finally, the School District alleges the decision of the arbitration panel was not supported by substantial evidence as required by section 17A.19(8)(f). It believes that all of the evidence supported a finding that the tentative agreement was not comparable to any other collective bargaining agreement in Iowa.

The MEA filed a cross-appeal. It contends that the court should have granted its motion to dismiss because the petition for judicial review failed to state a claim. The MEA asserts that an interest arbitration award may only be challenged upon the grounds set forth in section 20.17(6). This section provides that an arbitration decision will not be valid if its implementation is inconsistent with any statutory limitation on the public employer's funds or would limit the performance of a statutory duty.

The PERB, in its response, states that the School District should be restricted to arguments based on sections 17A.19(8)(a),

(c), (f), and (g) because those were the only issues raised before the district court. The School District has cited sections 17A.19(8)(b) and (e) in its appellate argument.

## I.

We consider first Moravia Education Association's cross-appeal that asserts the district court erred in not sustaining its motion to dismiss. We will discuss briefly several of the statutes that have a bearing on this issue.

Section 20.22, Iowa Code (1989), sets forth the procedure for public employers and employee organizations to follow in order to reach a collective bargaining agreement where a consensual agreement has not been possible. Section 20.22(1)–(10) contains the procedure for binding arbitration; with the eventual arbitration award constituting the collective bargaining agreement. *See* Iowa Code § 20.22(12). Section 20.22(11) provides:

> A majority of the panel of arbitrators shall select within fifteen days after its first meeting the most reasonable offer, in its judgment, of the final offers on each impasse item submitted by the parties, or the recommendations of the fact-finder on each impasse item.

The final provision of that section, section 20.22(13), then provides in relevant part:

> The determination of the panel of arbitrators shall be by majority vote and shall be final and binding subject to the provisions of section 20.17, subsection 6.

The MEA argues that the sole exception to the final and binding determination of the arbitrators under section 20.22(13) is the possible violation of section 20.17(6). That section provides in part:

> No collective bargaining agreement or arbitrator's decision shall be valid or enforceable if its implementation would be inconsistent with any statutory limitation on the public employer's funds, spending or budget or would substantially impair or limit the performance of any statutory duty by the public employer.

The MEA argues further that in order to challenge the substantive provisions of a collective bargaining agreement reached under section 20.22, the moving party must at least allege in his petition for judicial review that the arbitrators' decision: (a) is inconsistent with the employer's statutory limitation on funds, spending or budget, or; (b) substantially impairs or limits the performance of an employer's statutory duty.

The MEA finalizes its position as to this issue by arguing that since the School District's objections relate only to the substantive provisions or merits of the interest arbitration award, the court must dismiss its action under section 20.17(6) for none of the grounds set forth therein are urged in its petition. The School District disagrees and alleges that *Maquoketa Valley Community School Dist. v. Maquoketa Valley Educ. Assoc.*, 279 N.W.2d 510 (Iowa 1979), is controlling.

The MEA agrees that the *Maquoketa Valley* case permits judicial review of interest arbitration awards, but characterizes the decision as concerning "only procedural objections to the manner and method by which arbitrators proceed." According to the MEA, *Maquoketa Valley* is distinguishable from the case at bar because the School District here objects to the "merits" of the arbitration award and, unlike the *Maquoketa Valley* school district, it does not allege the panel "erred procedurally in any manner." The School District counters by arguing that the MEA misstates its argument and also misinterprets *Maquoketa Valley*.

In *Maquoketa Valley*, the supreme court refused to enforce an arbitration award because the panel did not follow the mandatory requirements contained in section 20.22(11). Citing its decision in *West Des Moines Educ. Assoc. v. PERB*, 266 N.W.2d 118 (Iowa 1978), the supreme court explained section 20.22(11) requires arbitrators to select either party's final offer or the fact finder's recommendation with respect to each impasse item. It held that the panel exceeded its authority by awarding a salary schedule, a single impasse item, which incorporated aspects of each party's final offer. The court reversed and remanded the case to the arbitration pro-

cess, for decision consistent with section 20.22(11). *Id.* at 513. In reaching its decision, the *Maquoketa* court determined that the "arbitration of a collective bargaining agreement" constitutes "agency action, reviewable only pursuant to section 17A.19, The Code." *Id.* at 512.

We believe the following comment from *Maquoketa Valley* is instructive:

We are satisfied arbitration of a collective bargaining impasse is agency action, reviewable only pursuant to section 17A.19, The Code.

PERB is clearly an administrative agency subject to chapter 17A. The several PERA cases which have reached this court have followed the judicial review procedures of section 17A.19.

The legislature has delegated to PERB some of its authority to control conditions of public employment. Determination of employment conditions in the public sector by collective bargaining is a privilege conferred by statute, and is conditioned upon the use of binding arbitration rather than strikes to resolve negotiation deadlocks. Supervision of bargaining and of impasse resolution is delegated to PERB. The legislature has determined, however, that absent agreement of the parties, an impasse shall be resolved by a panel of arbitrators.

"Agency action" means, among other things, all or part of an agency decision or its equivalent. If the arbitration panel was composed of PERB members, officials, or employees, its decision would be agency action. There is no logical reason why the same decision by a panel of arbitrators should be viewed differently.

This conclusion is consistent with the premise underlying constitutional challenges to public employee collective bargaining statutes in other jurisdictions. *See* Annot., 68 A.L.R.3d 885, at § 3, 4 (1976). An examination of the cases there discussed indicates Iowa's PERA delegates legislative authority, through PERB, to arbitrators. We need not consider the constitutionality of this delegation since the parties did not raise it. *Id.* at 512 (citations omitted).

We agree with the district court's decision that the MEA's motion to dismiss should be overruled. We conclude that an interest arbitration award constitutes an agency action reviewable pursuant to Iowa Code section 17A.19. We believe a gross inconsistency would result if we limited the review of agency actions to "procedural objections" to the exclusion of "merit issues." In this respect, we adopt the reasoning expressed by the supreme court on this subject in *Maquoketa Valley*. In doing so, we reject MEA's argument that the limitations set forth in section 20.17(6) are the only means through which a party can challenge an interest arbitration award. Section 20.17(6) invalidates an arbitration award and prevents enforceability if the award's implementation exceeds the limitations therein set forth.

■ But even if we were to assume merit in the MEA's contention, we believe the School District attacks the manner and method by which the arbitrators proceeded. The School District essentially contends that the arbitration panel, when enforcing the unratified tentative agreement as discussed in the division that follows, failed to apply the section 20.22(9) decisional criteria as required by the Public Employment Relations Act. This can be construed as an attack on procedure. In either event, we affirm the district court on this issue.

## II.

■ We consider now the merits of this controversy. The School District first asserts the arbitration award was not based on the mandatory decisional criteria of section 20.22(9). It claims the arbitration panel considered only comparability in reaching its decision. It then alleges that since the arbitration panel concluded that comparability supports the district, it was error to adopt the fact-finder's recommendations. Allied to this, the School District asserts the award was based solely on the tentative agreement, which it claims is not a

**178**

statutory consideration under section 20.-22(9).

To establish a background for this dispute, we believe it helpful to review portions of the statutory impasse-resolution scheme which the parties are to follow prior to filing a petition for judicial review. PERB rule 7.4(3), 621 Iowa Admin.Code 7.4(3), provides that the parties shall exchange copies of all proposals to present to the fact-finder. Rule 7.4(6) requires the fact-finder to make specific recommendations for resolution of each impasse item.

Likewise, Iowa Code section 20.22(2) and PERB rule 7.5(4) require the parties to an arbitration to submit final offers to the PERB on the impasse items. In addition, that section requires each party to submit to the PERB a copy of a draft of the proposed collective bargaining agreement to the extent to which agreement has been reached and the name of its selected arbitrator.[1] Section 20.22(11) and PERB rule 7.5(6) requires a majority of the panel of arbitrators to select the most reasonable offer, in its judgment, "of the final offers on each impasse item submitted by the parties, or the recommendations of the fact-finder on each impasse item."

The parties' right to define their dispute before the arbitrators is limited under section 20.22(3). That section provides that the impasse items to the arbitrators "shall be limited to those issues that had been considered by the fact-finder and upon which the parties have not reached agreement." As it relates to each of the impasse items, the arbitration board award is "restricted to the final offers on each impasse item submitted by the parties to the arbitration board or to the recommendation of the fact-finder on each impasse item." Iowa Code § 20.22(3).

As we noted earlier, the appellant rejected the tentative agreement reached by the negotiators. It argues that PERB rule 6.4, 621 Iowa Admin.Code § 6.4, gives them this right of rejection. We agree as does the appellee.

Rule 6.4, in pertinent part, provides:

Where the parties have reached a proposed (or "tentative") collective bargaining agreement, ... [the] employee organization shall ... notify the public employer whether the proposed agreement has been ratified.

The public employer shall ... likewise meet to accept or reject the agreement....

621 Iowa Admin.Code 6.4.

Thus, under this rule [2] not only the appellant,. but also the appellee has the right to accept or reject the tentative agreement. From our review of the record, we find that the arbitration panel did nothing that interfered with that right; nor was the School District in any respect penalized for exercising that right.

With the rejection of the fact-finder's recommendation by the appellant School District, the impasse continued. Since an agreement had not been reached, the MEA advanced the dispute to arbitration and, in accordance with section 20.22 of the PERA, final offers were exchanged, a three-person panel was appointed, and a hearing was held. The MEA again proposed the tentative agreement as recommended by the fact-finder. The School District put in issue only the salary schedule and longevity pay plan that we previously discussed. As a result, only those impasse items as generated by the proposals of the parties were presented to the arbitrators for decision.

Our supreme court in *West Des Moines Educ. Assoc.*, 266 N.W.2d at 128, held that "impasse item" means any section 20.9 sub-

---

**1.** Section 20.22 provides for the appointment of a panel of three arbitrators, with one member appointed by the public employer, one member appointed by the employee organization, and one member appointed mutually by the members appointed by the public employer and the employee organization. There is an alternative procedure whereby the two parties agree to sub-

mit their dispute to a single arbitrator. *See* Iowa Code §§ 20.22(2) and 20.22(4).

**2.** Likewise, under section 20.21 of the Code, both the appellant and the appellee as the public employer and the certified employee organization have the right to accept or reject the fact-finder's recommendation.

ject to bargaining on which the parties cannot agree. The supreme court in *Maquoketa Valley* reaffirmed its definition of "impasse item." *Maquoketa Valley*, 279 N.W.2d at 513. In that case, the arbitration panel selected the MEA's final offer on every aspects of the salary schedule, but also installed the non-degree lane proposed by the District. In reversing, the court held that the arbitration panel should have selected either of the final offers on salary or the fact-finder's report, in toto.¹ It rejected the MEA's argument that "impasse item" means any word, phrase, clause, sentence, or paragraph on which the parties cannot agree.

In *West Des Moines Educ. Assoc.*, when referring to the scope of negotiations as delineated in section 20.9, our supreme court held that those subjects of negotiation provided strong evidence that the legislature intended subject categories to be submitted to the arbitrator. *Id.* at 127. The following statement from *West Des Moines Educ. Assoc.* explains the court's reasoning:

> In our system the fact-finder is a neutral who would be expected to recommend to the arbitrator the most reasonable offer. The arbitrator, mindful of the fact-finder's neutrality, will often be prone to choosing the fact-finder's position in making his award. This propensity will force the parties to make more reasonable offers because the party who wins over the fact-finder will enter arbitration with a powerful ally. The party which fails to have the fact-finder recommend its position will be forced to think long and hard before it continues on to arbitration.
>
> \* \* \* \* \* \*
>
> In our opinion these sections are an attempt to carry out the objectives of final offer arbitration. Together they make it imperative that the parties present reasonable offers at the fact-finding stage, which in itself promotes

settlement. They encourage settlement after fact-finding and prior to arbitration.

266 N.W.2d at 127. Thus, under section 20.22(11), the panel of arbitrators must select the most reasonable offer of the final offers of each impasse item submitted by the parties or the recommendations of the fact-finder on each impasse item. In the case at bar, the panel selected the recommendation of the fact-finder.

We turn next to the full text of Iowa Code section 20.22(9). It provides:

9. The panel of arbitrators shall consider, in addition to any other relevant factors, the following factors:

a. Past collective bargaining contracts between the parties including the bargaining that led up to such contracts.

b. Comparison of wages, hours and conditions of employment of the involved public employees with those of other public employees doing comparable work, giving consideration to factors peculiar to the area and the classifications involved.

c. The interests and welfare of the public, the ability of the public employer to finance economic adjustments and the effect of such adjustments on the normal standard of services.

d. The power of the public employer to levy taxes and appropriate funds for the conduct of its operations.

By way of summary, section 20.22(9) requires the panel in reaching their decision to consider in addition to any other relevant factors: (1) past collective contracts between the parties; (2) comparability data; (3) the public interest, including the public employer's ability to pay; and (4) the public employer's power to levy taxes. Here, the dispute comes more into focus for the School District alleges that the arbitration panel considered only comparability in reaching its decision. It argues further that since the arbitration panel concluded that comparability supported the District,³

---

**3.** The majority of the arbitration panel did find that the comparability factor supported the School District. The majority of the arbitration panel concluded:

> In the instant case a review of the comparables, regardless of which comparables are used—the Association's or the Board's—establishes that the tentative agreement covering

it was in error to award the fact-finder's recommendation/MEA's final offer.

■ This then brings us to the next issue as to whether the section 20.22(9) factors are directory and not mandatory. The MEA asserts the factors are merely guidelines which arbitrators are free to apply or ignore. The School District argues they are mandatory. We conclude and hold that it is mandated by the legislature that the arbitrators consider each of the factors of section 20.22(9) when reaching their decision. We further determine that the weight to be accorded each factor is left to the panel to determine under the circumstances of each case.[4] *Dubuque Community School Dist. v. PERB*, 424 N.W.2d 427, 431 (Iowa 1988).

■ In reaching the decision that the provisions of section 20.22(9) are mandatory, we are mindful of that principle of law that our construction of a statute must be sensible and fairly made with a view of carrying out the intent of the legislature. *In re Marriage of Williams*, 199 N.W.2d 339, 344 (Iowa 1972). We believe the decision just announced meets this principle.

In labor relations law, there are two kinds of binding arbitration. The supreme court in *West Des Moines Educ. Assoc.*, citing with approval from the brief of the PERB, stated:

"Arbitration is most frequently used for the resolution of grievances. The term-of-art for this type of arbitration is 'rights' arbitration. The second principal type of arbitration is used in the resolution of a contract negotiations dispute. This type of arbitration, which is of the type at issue here, is called 'interest arbitration.'

"Interest arbitration itself is of two basic types. 'Final offer' arbitration or 'conventional' arbitration. In conventional arbitration the arbitrator simply arrives at a result and makes his award either on the position advocated by one of the parties or at a point between the positions of the parties.

"In 'final offer' arbitration, the arbitrator must select the position of one of the parties and may *not* select a compromise position.

"It is the 'final offer' system which the Iowa legislature incorporated into our statute."

266 N.W.2d at 119.

The fact that Iowa has adopted the final offer system strengthens our view that the components of section 20.22(9) are mandatory factors that the panel must take into consideration in reaching its decision. There is no strong reason for the legislature to insert those factors unless it intended that they be given consideration in the decision-making process.

Having determined that the factors of section 20.22(9) are mandatory, we must next determine whether the panel considered comparability as the only applicable statutory factor. When we review the panel's decision, we, like the trial court, conclude that all of the enumerated factors which were relevant to the impasse were considered.

The MEA and PERB both argue the arbitration panel considered three of the four section 20.22(9) criteria in reaching its decision. The MEA and PERB assert the panel considered the parties' past collective bargaining agreements, the District's ability to pay, and comparability. There is no dispute as to the School District's power to levy taxes.

As it relates to ability to pay, the School District in its reply brief informs us that it was a neutral factor which did not support

---

the compressed salary schedule, the vertical and horizontal increments, and the longevity provision is unique to Iowa schools. There is no evidence of any other district having an eight-step salary schedule (0–7) for all lanes.... Succinctly stated, the comparables simply do not support the tentative agreement arrived at by the parties regarding the issue of salary. The comparables are far more supportive of the Board's final offer than that of the Association's and the fact-finder's recommendation.

4. The School District in its brief admits this finding.

either party's final offer.[5] The School District further informs us that it conceded it had resources to finance the tentative agreement, but it was arguing "the tentative agreement was unsupported by the other section 20.22(9) criteria."

As it relates to section 20.22(9)(a) criteria, when we review the total record, we conclude that the arbitration panel considered as relevant the parties' bargaining and the tentative agreement which it yielded, including the various concessions each had made. The panel noted the District's bargaining objective of a multi-year agreement and the MEA's goal of an improved salary concession.

■ We agree with the appellant that the arbitration panel gave only limited discussion to the parties' prior agreements. But the opinion does discuss the bargaining which created the current impasse, and we believe that inherent within that discussion is the bargaining that led up to past contracts, a factor listed in section 20.22(9)(a). We concur arbitrators must consider the parties' past collective agreements for arbitrators must be aware of the impact their awards will have on the parties' existing contractual relationship. We find no error here.

■ The decision of the panel commendably recites the background of this dispute and the respective positions of the interested parties. The panel then discussed those various positions and, when it reached its decision, it set forth its reasoning. Admittedly, the decision itself does not discuss in detail each of the relevant factors of section 20.22(9), but when read in light of all its provisions, we are satisfied that the relevant factors were considered. In addition, the panel had the right to consider "any other ... factors" which it considered "relevant." In this respect, we find those other factors considered by the panel to be appropriate under the factual setting of this case.

The School District also claims error for the panel based its award exclusively on the rejection of the tentative agreement. We do not find merit in this contention. It is true that the majority of the panel adopted the fact-finder's recommendation, which was the tentative agreement. But it is clear from the record that it reached its decision in accordance with the governing statute. The panel was required by section 20.22(11) to select the most reasonable offer in its judgment of the parties' final offers or the fact-finder's recommendation. Because the fact-finder's recommendation included the tentative agreement does not mean that the award was based exclusively on the District's rejection. The panel's majority in its decision stated:

> The elevation of tentative agreements to the status of final and binding agreements would seriously affect the role of negotiators. The traditional role of the negotiator has been to achieve a settlement within the guidelines established by the constituency the negotiator represents. In the reality of collective bargaining, there may be times when the negotiator, cognizant of all aspects of the particular bargaining, may conscientiously deviate from those guidelines sincerely believing that he or she can persuade the constituency to accept the tentative agreement. If such tentative agreements becoming final and binding, the role of the negotiator will be significantly reduced to the detriment of the process. Tentative agreements are precisely what the term implies—tentative until ratified by the respective constituencies.

We concur with this statement.

■ The School District also seeks reversal on the basis of section 17A.19(8)(f), maintaining that the award is unsupported by substantial evidence in the record when the record is viewed as a whole. To support this argument, the School District contends that comparability was the only applicable criteria for the panel's consideration.

Our concern here is whether there is substantial evidence to support the arbitration panel's conclusion that the fact-finder's recommendation was the most reasonable

---

**5.** This factor was referred to in the panel's decision under the heading "Board's Position." The panel did note that the School District's position was not based on inability to pay.

under the circumstances. From our previous discussion of the factors of section 20.22(9), we reach the conclusion that there is.

 Our role is not to substitute our judgment for that of the agency, since judicial review of "agency action" is limited. *McClure v. Iowa Real Estate Comm'n,* 356 N.W.2d 594, 597 (Iowa App.1984). We need not determine whether we would have reached the same conclusion as to what was the most reasonable among the competing positions, but instead need only determine whether the panel's decision is supported by evidence which "a reasonable mind could accept as adequate to reach a conclusion." *City of Davenport v. PERB,* 264 N.W.2d 307, 311 (Iowa 1978). In addition, the possibility that another, inconsistent conclusion might be drawn from the evidence does not prevent a finding from being supported by substantial evidence. *Peoples Memorial Hosp. v. Iowa Civil Rights Comm'n,* 322 N.W.2d 87, 91 (Iowa 1982). The "agency's" decision is entitled to the court's deference if reasonable and not clearly erroneous. *Iowa Assoc. of School Bd. v. PERB,* 400 N.W.2d 571, 575 (Iowa 1987).

The School District's final argument for reversal, based upon Iowa Code section 17A.19(8)(g), is that the panel's award is unreasonable, arbitrary, capricious, or characterized by an abuse of discretion or clearly unwarranted exercise of discretion. We find no merit in this contention.

The arbitration panel considered the relevant factors of section 20.22(9) and, as we set forth, determined that the comparability evidence supported the District's position, but when the decision is read as a whole, it also found that other relevant factors did not. We conclude that it made its selection of the most reasonable of the competing positions after a complete review of the evidence. The panel's decision is supported by substantial evidence.

 In reaching our conclusion to affirm, we have considered every contention urged by the School District in support of its position that the trial court's ruling should be overruled, whether specifically mentioned or not, and find none which persuades us to reach a different conclusion.[6] We affirm.

AFFIRMED.

6. We do agree with the School District's contention that the panel incorrectly concluded that the School District "gained an advantage" by accepting some tentative agreement items yet "limited the Association's agenda in the impasse procedures." The School District's acceptance of some portions of the tentative agreement was properly regarded by the fact-finder as "good faith bargaining"; and, in our opinion, it was consistent with the policy of narrowing the parties' differences. Once the District rejected all or part of the tentative agreement, the MEA was free to treat all issues as open and unresolved.

However, we do not believe that this recitation by the panel is of sufficient dimension to require a reversal.